IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) HAROLD WAYNE HURST and<br>(2) MARY ILIC HURST<br><br>   Plaintiffs,<br><br>VS.<br><br>(1) UNITED STATES OF AMERICA ex rel<br>  The Indian Health Service &<br>  Chickasaw Nation Medical Center, an<br>  Agency of the Chickasaw Nation<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 17-CV-__17-CV-189-SPS__<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, complaining of Defendant, allege and state:

### JURISDICTION AND VENUE

1. The Plaintiffs in this action are Harold Hurst and his wife Mary Hurst.

2. Plaintiffs are citizens and residents of the State of Texas.

3. This is a claim arising out of medical negligence at the Chickasaw Nation Medical Center and the Indian Health Service, an agency of the United States Department of Health and Human Services.

4. The United States of America is a defendant, in its capacity as the responsible entity, pursuant to 25 U.S.C. §450f, *et. seq.* and 28 U.S.C. §2671, *et. seq.,* (FTCA), for the actions of:

  a. The Indian Health Service (IHS), and

  b. The Indian Health Services' contract service unit, namely, the Chickasaw Nation Medical Center (CNMC), located in Ada, Oklahoma, and

   c. The agents and employees of CNMC, among whom are various individual nurses and doctors.

5. This Court has jurisdiction of the matter pursuant to 28 U.S.C. §1346(b) and §2671, *et. seq.,* and pursuant to supplemental jurisdiction conferred upon this Court pursuant to 28 U.S.C. §1367(a).

6. The events about which Plaintiffs complain primarily took place at CNMC in Ada, Pontotoc County, Oklahoma, in the Eastern District of the United States District Court, sitting in Oklahoma.

7. The CNMC is under the direct control of the Chickasaw Nation Department of Health and, therefore, under the control of the Chickasaw Nation and its Governor.

8. Dr. Judy Goforth Parker, R.N., PhD, was the Secretary of the Chickasaw Nation Department of Health at the time of the incidents complained of herein and continues in that position at the time this Complaint is filed.

9. Plaintiffs have, heretofore, pursuant to the FTCA, filed claims with the United States, which claim was denied by letter dated and mailed February 8, 2017, from the United States Department of Health and Human Services.

10. Plaintiff contends that the requirements of 12 O.S. § 19.1 do not apply to proceedings in this Court as they are procedural, and not substantive, requirement governing claims brought in Oklahoma District Courts[1]; however, should § 19.1 be found applicable to this proceeding, Plaintiff requests, pursuant to § 19.1(B)(1), leave to show cause why an additional 90 days within which to file the required affidavit is needed or leave to make application for an indigency exemption pursuant to § 19.1(D).

---

[1] *See Eerie R.R. v. Tompkins*, 304 U.S. 64, 64 S. Ct. 817, 82 L. Ed. 1188 (1938) *and Sims v. Great American Life Ins. Co.*, 469 F.3d 870 (10th Cir. 2006).

## FACTS

11. On April 25, 2016, Harold Hurst was admitted to CNMC for a revision of a prior abdominal hernia repair and removal of infected mesh.

12. Agents or employees of CNMC, including only one surgeon, Mathew Marcus McTague, DO, performed the surgery, during which they made an 18 cm vertical incision to Harold Hurst's abdomen and purportedly removed all infected mesh; however, later surgeries would reveal that the agents or employees of CNMC failed to remove the majority, if not all, the infected mesh.

13. At the conclusion of the surgery, they loosely stitched Harold Hurst's fascia together and otherwise left the wound open and applied bandages.

14. Harold Hurst was kept at CNMC for three days prior to his release by Dr. McTague on April 28, 2016, with instructions given to Mary Hurst on how to change the bandages and an appointment to follow up in two weeks at Dr. McTague's clinic office at CNMC.  See Figure 1.



*Figure 1 - Picture of Harold Hurst's surgical wound at time of discharge from CNMC on April 28, 2016, taken by Mary Hurst*

15. The agents or employees of CNMC performing the surgery and providing the post-surgical care failed to recognize that, even had all of the infected mesh been removed, Harold Hurst would require continued hospitalization and careful monitoring in order for the surgical wound to heal properly; this need was made more important by Harold Hurst's history of diabetes.

16. The agents or employees of CNMC performing the surgery and providing the post-surgical care failed to provide referrals to or otherwise direct the Plaintiffs to adequate wound care upon discharge.

17. The agents or employees of CNMC performing the surgery and providing the post-surgical care failed to provide proper activity restrictions to avoid complications related to the surgical wound.



*Figure 2- Picture of Harold Hurst's surgical wound taken and sent to Dr. Mathew Marcus McTague on April 30, 2016, by Plaintiff Mary Hurst.*

18. Plaintiffs changed the dressing on Harold Hurst's surgical wound as instructed over the next few days.

19. The morning of Saturday, April 30, 2017, Mary Hurst became concerned that the wound was not healing properly and sent a picture to Dr. McTague, who replied "Looks ok, increase dressing changes to 3x/day." *See* Figure 2.

20. Dr. McTague, an agent

or employee of CNMC, failed to recognize that the stitches he had utilized were failing to keep the fascia closed and the Harold Hurst's intestines were already beginning to protrude, a condition requiring immediate medical intervention.

21. Dr. McTague, an agent or employee of CNMC, failed to recognize that necrosis had already set in on tissue in the wound and the wound would require debridement by a wound care professional in order for the wound to continue healing.

22. Later in the day on April 30, 2016, the stitches holding Harold Hurst's fascia failed and Harold Hurst's intestines spilled out.

23. Harold Hurst was transported by helicopter to Methodist Dallas Medical Center where he would undergo three surgeries, during one of which it was discovered that most, if not all, of the infected mesh purportedly removed at CNMC had not been removed. *See* Figure 3 on page 7.

24. Harold Hurst sustained injuries as set forth herein, resulting from an act, omission or instrumentality which was under the exclusive control and management of the agents and employees of CNMC; that the events causing his injuries or damages were of a kind which ordinarily do not occur in the absence of negligence on the part of the agents and employees of CNMC.

25. Agents and employees of CNMC negligently failed to inform Plaintiffs of the material risks involved in the course of treatment rendered to Harold Hurst; failed to inform them of alternative treatments and the reasonably foreseeable material risks of each alternative; that Plaintiffs would have chosen the option of a different course of treatment had the alternatives and material risks of each been made known; and that Defendant's conduct resulted in the injuries to Harold Hurst and the damages set forth below.

26. CNMC failed to provide adequate medical resources for the surgery performed by Dr. McTague, including an assistant physician and adequate wound care services and devices.

27. Prior to March of 2015, Dr. McTague had three separate charges of driving under the influence and one charge of transporting an open container and had been the subject of medical board actions in at least two different states.

28. At the time of the medical care and treatment provided to Harold Hurst in April 2016, Dr. McTague was privileged, credentialed and otherwise entrusted to provide medical care and treatment to patients of CNMC.

29. The agents or employees of CNMC were negligent in retaining, supervising, privileging and otherwise entrusting the care and treatment of its patients to Dr. McTague, and as a result, Plaintiffs suffered the damages set forth herein.

30. The Indian Health Manual published by the Indian Health Service (IHS) establishes credentialing procedures which are to include an investigation into an applicants competence, licensure history, drug use, and health status, among other factors, for the purpose of "provid[ing] quality health care to American Indian . . . patients; and to avoid exposing patients . . . from [sic] unnecessary risks from unprofessional, unethical, or incompetent health care providers."[2]

31. The Indian Health Manual further provides that "[i]t is unethical for any staff member to use alcohol . . . in a manner that places them in violation of the law or in any way harms patients" and further requires that "[c]linical staff must follow the requirements outlined in this chapter and immediately report allegations, written or oral, of misconduct or possible

---

[2] Indian Health Manual Part 3, Chapter 1: Medical Credentials And Privileges Review Process. Available at https://www.ihs.gov/ihm.

violations of ethical standards to their supervisor or other appropriate official." [3]

32. IHS and CNMC officers, employees and staff, including Dr. Judy Goforth Parker, the Chickasaw Nation Secretary of Health, failed to adopt and/or follow policies, procedures, and standards that comply with the Indian Health Service mandates previously quoted that were put in place to protect patients from the very outcomes experienced by Plaintiffs.

33. CNMC officers, employees and staff failed to establish and maintain a Culture of Safety

34. Even though Harold Hurst has made a recovery nothing short of miraculous through the treatment provided at Methodist Dallas Medical Center, he has permanent weight lifting and activity restrictions that have greatly impacted his quality of life and he will have to be monitored for the rest of his life and will possibly undergo further surgeries.



*Figure 3- Medical staff prepare Harold Hurst for emergency surgery at Methodist Dallas Medical Center on April 30, 2016*

---

[3] *Id.* at Chapter 3, Sections 1(E)(5) and 2(F)

35. Harold Hurst has also endured a psychologically traumatizing event and will carry the mental and emotional scars of that event the rest of his life.

36. Mary Hurst has suffered injuries in the nature of loss of consortium as a result of the injuries to her husband.

## CLAIMS FOR RELIEF

### First Claim for Relief

37. All of the previous allegations are incorporated herein by reference in this First Claim for Relief.

38. Agents or employees of CNMC who performed the surgery and provided post-surgical care, owed to Harold Hurst the duty to exercise that degree of skill, diligence and foresight exercised by and expected of physicians.

39. The medical care and treatment provided to Harold Hurst by agents or employees of CNMC and IHS departed from accepted standards of medical care so as to constitute medical negligence, gross negligence, and reckless disregard for the rights of others.

40. The departures from accepted standards of medical care caused Plaintiff Harold Hurst to suffer injuries and damages.

41. Agents or employees of Chickasaw Nation Medical Center were responsible for Harold Hurst's medical care at all times relevant to the matters before this Court.

**Second Claim for Relief**

42. All of the previous allegations are incorporated herein by reference in this Second Claim for Relief.

43. The departures from accepted standards of medical care caused Plaintiff Mary Hurst to suffer injuries and damages secondary to those suffered by Harold Hurst, in the nature of loss of consortium.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask for damages in an amount in excess of $75,000.00 and up to $10,000,000.00 (the amount stated in his tort claim form) on behalf of Harold Hurst and in excess of $75,000.00 and up to $1,000,000.00 (the amount stated in her tort claim form) on behalf of Mary Hurst and each Plaintiff asks for costs of this action, and for such further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s Dale Rex
Dale Rex, OBA #31199
SWEENEY, DRAPER & CHRISTOPHER, PLLC
P.O. Box 190
Ada, OK 74821
580-332-7200
580-332-7201 – Fax
dale@sdcada.net
ATTORNEYS FOR PLAINTIFFS

ATTORNEY'S LIEN CLAIMED